1

2

3

4

5

6

7

8                   **IN THE UNITED STATES DISTRICT COURT**

9                  **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  VANCE BLAINE,                          No. CIV S-10-0103-MCE-CMK-P

12              Plaintiff,

13        vs.                              <u>FINDINGS AND RECOMMENDATIONS</u>

14  DUCAN, et al.,

15              Defendants.

16  _____/

17              Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42

18  U.S.C. § 1983.   Pending before the court is plaintiff's amended complaint (Doc. 13).

19              The court is required to screen complaints brought by prisoners seeking relief

20  against a governmental entity or officer or employee of a governmental entity.  <u>See</u> 28 U.S.C.

21  § 1915A(a).  The court must dismiss a complaint or portion thereof if it: (1) is frivolous or

22  malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief

23  from a defendant who is immune from such relief.  <u>See</u> 28 U.S.C. § 1915A(b)(1), (2).  Moreover,

24  the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain

25  statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

26  This means that claims must be stated simply, concisely, and directly.  <u>See McHenry v. Renne</u>,

1

84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied

if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon

which it rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because plaintiff must

allege with at least some degree of particularity overt acts by specific defendants which support

the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is

impossible for the court to conduct the screening required by law when the allegations are vague

and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

This action proceeds on plaintiff's amended complaint, filed as of right on April

9, 2010.  Plaintiff names the following as defendants: Ducan, Stevens, White, Johnson, Viera,

Roszco, Lassister, Archard, Morrison, and Watson.[1]  Plaintiff offers the following statement of

his first claim:

> Plaintiff alleges that prison officials misconduct acted oppressively and
> abusively by excessive cell searches, opening of plaintiff's legal mail,
> reading the contends, then making a determination that plaintiff's legal
> mail was contraband, then proceeded to confiscat the legal mail.  Then
> making plaintiff go through the administrative appeal system before
> returning legal mail which took an exceptionable long period of time
> which denied plaintiff a meanful access to the courts. [sic].

Plaintiff then sets forth the following factual allegations in support of this claim:

> 1.    On June 19, 2009, defendant White performed a cell search.  During the
> course of this search, White allegedly opened and read various "individual
> envelops [sic]" which plaintiff claims are legal mail.  According to
> plaintiff, White determined that "plaintiff's legal mail was contraband. . ."
> and then confiscated it.

/ / /

/ / /

---

[1]    Defendants White and Stevens are listed in the caption of the amended complaint,
but not at Part III which asks for plaintiff to list all defendants.  Johnson is listed as a defendant
in Part III, but not listed on the court's docket.  The Clerk of the Court is directed to update the
docket to add Johnson as a named defendant.

2.  Plaintiff then informed White that the item of mail had been received just the day prior and related to a pending California Supreme Court post-conviction action.   Plaintiff claims that defendant White refused to answer him when asked why his legal mail was being confiscated.

3.  White then took plaintiff to the prison mail room where defendant Stevens again "open plaintiff's legal mail and commence to reading all of the contends to review the legal mail officially and to make a determination to see if plaintiff's legal mail is contraband [sic]."  Stevens also determined that the mail contained contraband "and further stated that if he [Stevens] knew about it plaintiff would not have received it at all. . . ."  Plaintiff was informed that correctional staff had the right to confiscate any contraband materials.

4.  Plaintiff was then taken to see defendant Ducan who also opened and "slowly read" plaintiff's legal mail.  Ducan agreed with White and Stevens that the mail was contraband.  Ducan instructed White to "issue plaintiff a search receipt with the items confiscated."

5.  On June 22, 2009, plaintiff spoke with defendant Viera to "convey my concerns about my legal mail and explain that I was in the courts with an post-conviction writ of habeas corpus and that the information in the legal mail is going to be used for evidence, which is a criminal identification chronological history report [rap sheet] . . . ."

6.  According to plaintiff, Viera then asked officer Morrison for the combination to the locker where the confiscated mail had been placed.  Viera then read the mail himself and then gave Morrison instructions "to take plaintiff to correction officer Watson in R and R to have plaintiff fingerprinted and to mail his legal materials to the Federal Bureau of Investigation (FBI) Department of Justice (DOJ)."

7.  Plaintiff was taken to "R and R" the next day by Morrison to see defendant Watson "who took custody of plaintiff's legal mail and Watson then said that he must read plaintiff's legal mail to determine if he could legally fingerprint plaintiff and then mail those prints to FBI-DOJ."  About 45 minutes later, plaintiff was fingerprinted and informed that information would be sent to the FBI and DOJ.

8.  Plaintiff states that he then filed an administrative appeal alleging that defendants hindered his access to the courts by confiscating his legal mail.  Plaintiff's appeal was denied at the first level by defendant Ducan on July 14, 2009.

9.  Next, plaintiff claims that defendant Roszco "had plaintiff's legal mail."  Plaintiff states that Roszco and Watson "had a discussion on the legality of mailing plaintiff's legal mail which Watson gate plaintiff's legal mail to CC1 E. Roszco to determine if plaintiff mail can be mailed."

/ / /

10. Dissatisfied with the first-level response to his inmate appeal, plaintiff filed a grievance at the next level on July 24, 2009. In this second-level grievance, plaintiff alleged that "correctional officers and staff are deliberately hindering, obstructing, and denying plaintiff access to the courts by not mailing plaintiff's legal mail to the FBI-DOJ and not explaining why plaintiff's legal mail was confiscated and why it is considered as contraband. . . ." He also demanded to know where his legal mail was then located. Plaintiff received a response to his second-level appeal on August 28, 2009. The response indicated, according to plaintiff, that "Correctional Sergeant Viera had hand delivered plaintiff's legal mail to the inmate trust office and that the record indicate that plaintiff's legal mail was sent out on July 16, 2009."

11. Plaintiff alleges that this appeal response is false in that, on July 20, 2009, defendant Roszco "just put plaintiff's legal mail . . . in her desk draw[er] and forgot about it, and failed to mail plaintiff legal mail." Plaintiff does state that his legal mail was eventually mailed out on August 26, 2009.

12. Plaintiff's final-level appeal was denied on December 21, 2009.

Next, plaintiff outlines the following statement of his second claim:

Plaintiff alleges that prison officials misconduct led to retaliatory tactics by confiscating plaintiff's fore (4) boxes of legal materials and prison officials ignored multiple written request to return plaintiff legal materials that needed for pending court case. . . in California Supreme Court. Plaintiff alleges that prison officials retaliatory and misconduct actions are for plaintiff use of the administrative appeal process . . . where prison officials refuse to allow plaintiff to show when bowel and urin incontence happen even though plaintiff had medical chrono from a doctor, but plaintiff was still denied. And [another grievance] where plaintiff alleges that prison official open legal mail, read it, then confiscated it as contraband and refuse to mail legal mail in a timely manner which hinder, obstructed and denied plaintiff right of access to the courts.

Plaintiff alleges the following supporting facts:

1. Plaintiff alleges that, while waiting from a response to a prisoner grievance he had filed, "plaintiff was subjected to excess sell searched, by correctional officers W.H. White, Archard, Morrison, Lassiter, and Sergeant Johnson. . . ." He states that legal mail was improperly opened during the course of these searches and "these same prison officials made a determination that plaintiff had an unacceptable amount of legal materials." Plaintiff adds: "The above named prison officials call Correctional Officer Aguirre who stores prisoners property who has excessive amount of legal materials." Plaintiff states that he attempted to explain to Aguirre that the materials were related to an ongoing case.

4

2.      Plaintiff claims that, on July 31, 2009, he returned to his cell and noticed that four boxes of legal materials were missing.  Plaintiff then filed an inmate appeal concerning the missing boxes.

3.      Plaintiff received a first-level response on August 2, 2009.  According to plaintiff, the response said that "White confiscated two contraband milk crates that plaintiff was using to hold legal materials, but claim that no legal papers was confiscated. . . ."  Plaintiff contends that the denial of his appeals amounts to the failure of prison officials to conduct an "effective investigation in order to locate plaintiff's legal materials."

4.      Plaintiff was later informed in a second-level appeal response on October 30, 2009 that he "can access his legal materials by submitting an inmate request for interview to R. Aguirre, CMF property room officer and show substantiation of his active legal cases."  Plaintiff states that when he did so he learned that his legal materials had never been in the property room.  Plaintiff's appeal was later denied at the final level of review.

## II.  DISCUSSION

The gravamen of plaintiff's amended complaint is that prison officials improperly confiscated (and then apparently lost) his legal materials, thereby depriving him access to the courts.   Prisoners have a First Amendment right of access to the courts.  See Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) (discussing the right in the context of prison grievance procedures). This right includes petitioning the government through the prison grievance process.  See id. Prison officials are required to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  Bounds, 430 U.S. at 828.  The right of access to the courts, however, only requires that prisoners have the capability of bringing challenges to sentences or conditions of confinement.  See Lewis, 518 U.S. at 356-57.  Moreover, the right is limited to non-frivolous criminal appeals, habeas corpus actions, and § 1983 suits.  See id. at 353 n.3 & 354-55. Therefore, the right of access to the courts is only a right to present these kinds of claims to the court, and not a right to discover claims or to litigate them effectively once filed.  See id. at 354-55.

1    As a jurisdictional requirement flowing from the standing doctrine, the prisoner

2   must allege an actual injury.  See id. at 349.  "Actual injury" is prejudice with respect to

3   contemplated or existing litigation, such as the inability to meet a filing deadline or present a

4   non-frivolous claim.  See id.; see also Phillips v. Hust, 477 F.3d 1070, 1075 (9th Cir. 2007).

5   Delays in providing legal materials or assistance which result in prejudice are "not of

6   constitutional significance" if the delay is reasonably related to legitimate penological purposes.

7   Lewis, 518 U.S. at 362.

8    In this case, plaintiff has not alleged any actual injury.  While he states that he had

9   cases pending in the California Supreme Court at the time his legal materials were not in his

10  possession, he does not allege that he missed any deadline set by the court or that he was

11  prejudiced in any way by the inability to access his legal materials.

12  / / /

13  / / /

14  / / /

15  / / /

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

**III.  CONCLUSION**

Because it does not appear possible that the deficiencies identified herein can be cured by amending the complaint, plaintiff is not entitled to leave to amend prior to dismissal of the entire action.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).

Based on the foregoing, the undersigned recommends that this action be dismissed and that all pending motions be denied as moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

 DATED: August 5, 2010

                                                        CRAIG M. KELLISON
                                                        UNITED STATES MAGISTRATE JUDGE